CAROLINE LORINCZ, PETITIONER-APPELLANT, v. JOHN A. ROEBLING'S SONS CO., RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 9, 1953—Decided April 30, 1953.

Before Judges EASTWOOD, BIGELOW and JAYNE.

*Mr. C. Zachary Seltzer* argued the cause for the appellant (*Mr. N. Morton Rigg,* attorney).

*Mr. Samuel Levinson* argued the cause for the respondent.

The opinion of the court was delivered by

BIGELOW, J. A. D. The Workmen's Compensation Division and the County Court successively denied appellant's petition for compensation on account of the death of her husband in the course of his employment by the respondent John A. Roebling's Sons Co. While both tribunals found that decedent met with an accident just before his death, they also held that the appellant failed to prove that the accident was the cause of death.

Lorincz, the decedent, started work the last day of his life at 3:45 P. M. He had been employed by Roebling's for two weeks as a learner, but this afternoon, for the first time, he had a regular job—a swift tender. A swift is an apparatus on which are put coils of wire in such manner that the wire may be drawn through a tempering furnace. The coils of wire were heaped up, 2 or 3 feet high, ready for the swift tenders, about 50 feet from decedent's furnace. Each coil was 22 inches in diameter, somewhat like a cruller, with a six-inch hole in the center. It weighed 180 to 185 pounds. Decedent would drag a coil from the pile of coils, roll it across the floor, push and lift it up on the swift in back of his furnace, and splice one end of the wire to the wire of the next coil. Then to the pile for another coil, and so on. It was heavy labor for any man, and Lorincz was small— 5 feet 7 inches tall, and weighed only 140 pounds. He was 39 years old, in perfect health.

About 7:15 in the evening he was found by Norcross, the guard, while making his rounds, lying on the floor only a few feet away from the heap of wire coils. From this witness comes our fullest narrative of Lorincz' death. "He was lying on his back, squirming around, with a coil of wire across his right leg and testicles." The guard called to his aid another workman, Jaczko, who was not far off. "We lifted the coil of wire, which I could not lift off myself. * * * the weight of it. I have arthritis in the arms. * * * When we moved the coil of wire, he didn't make no sound; he didn't make no noise whatever, but he took his hand and put it right down on his testicles. * * * He was breathing

real heavy and I'd say he laid there about three minutes and he gave one flutter like that there (the witness indicates with his hands), moved hisself, gave one flutter and his eyes started to sink back in his head, and he didn't move no more after that." "Did he continue breathing after this shudder? No." On cross-examination Norcross was asked, "Are you sure this coil was on any portion of this man's groin?" And he answered, "Yes, sir, I am sure."

The guard's testimony was corroborated by Jaczko and by two other workmen. One of them, Edward Hutton, added that Lorincz "was very pale and twisting and turning. * * * He was sweating a good bit. * * * Well, he appeared to be in agony." There was no evidence contradicting the testimony that we have recited.

A thorough autopsy was performed by an experienced pathologist, who testified in detail to his findings, which may be summed up in the statement that all the organs of decedent were in normal condition. The doctor reported that the autopsy did not disclose the cause of death, but he definitely determined that the cause was not heart disease.

The doctor observed abrasions on one elbow and on the front of the trunk at the margin of the last rib. We think it a fair and probable hypothesis that Lorincz, pulling one of the heavy coils from the pile, slipped or lost his balance and fell on his back, hitting his elbow, and that the coil toppled over and fell on him. The proof supports the finding of the deputy director and the county judge that an accident occurred.

Dr. Bernstein, a specialist in diseases of the heart and circulatory system and in internal medicine, gave his opinion of the cause of death, based on a hypothetical question; that the heavy coil of wire falling on the man caused such pain and shock attendant upon the pain, that a narrowing of his coronary blood vessels resulted, cutting down the blood and oxygen supply of his heart muscle and so produced death. Counsel for the employer, in cross-examination, centered his attack on the supposed cause of the pain and suggested the intense pain might have been caused by some disease,

some internal condition; but the doctor was firmly of the opinion that the autopsy negatived such an hypothesis. He considered that the coil of wire lying on the man's body was the most probable cause of the pain. He was asked by the deputy director, "Would there be any physical evidence distinguishable on autopsy of injury to the testicles sufficient to cause pain, sufficient to cause this state of shock?" He replied, "There need not be, Sir." "If there were no ruptured blood vessels, one might find no evidence of damage to the tissues."

Dr. Saul Solomon held to the same opinion. He pointed out "the testicle is so extremely sensitive that even a slight trauma in that region is extremely painful."

For the employer, four medical experts testified that in their opinion any blow, or trauma, severe enough to bring about death as described by Dr. Bernstein, would have left some external evidence that would have been observed at the autopsy. "You would expect some discoloration or some evidence of bruise, or some swelling." One of them said that a blow on the testicles "would absolutely result in hemorrhage within the scrotum" and a "palpable swelling."

One of the experts for the employer conceded that at least half an hour elapses before the skin becomes discolored after a bruise, and sometimes as much as 24 hours. The discoloration is caused by an excessive amount of blood flowing into the bruised area. But in this case it seems probable from the evidence that Lorincz died no more than 20 minutes, or half an hour, after he fell to the floor—and at death the circulation of the blood stopped. There is no evidence how soon a swelling will follow a bruise, or whether the swelling will occur after death. We are more impressed by the testimony of the physicians produced by appellant that an injury received by decedent might leave no physical evidence, than we are by the testimony to the contrary.

It seems to us that the deputy director and the county judge both gave insufficient weight to the central facts in the case: Lorincz was in excellent health; he was seen by a fellow workman, working at his appointed task about

7 P. M.; 15 minutes later he was observed on the floor, in agony; in four or five minutes more he was dead. Something caused his death. Death by accident appears to us probable rather than death by disease. The process of elimination gives strong support to the hypothesis of appellant's medical experts.

On the whole case, we find that petitioner must prevail. Judgment reversed.